IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRYAN RANDALL MONKRES, | ) | No. C 04-2311 CW (pr) |
| | ) | |
| Petitioner, | ) | |
| | ) | ORDER DENYING PETITION FOR |
| v. | ) | WRIT OF HABEAS CORPUS |
| | ) | |
| MICHAEL MARTEL, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

INTRODUCTION

Petitioner Bryan Randall Monkres, a state prisoner incarcerated at Mule Creek State Prison (MCSP) in Iona, California, filed a <u>pro se</u> petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a conviction and sentence imposed by Lake County Superior Court.

Respondent[1] has filed an answer.  Petitioner has filed a traverse.  Having considered all of the papers filed by the parties, the Court DENIES the petition.

PROCEDURAL HISTORY

Following a jury trial, Petitioner was convicted on February 28, 2002 of ten counts of rape and two counts of forcible oral copulation.  On March 29, 2002, the trial court denied a motion for a new trial and sentenced appellant to an aggregate term of

---

[1]  Under Rule 2(a) of the Rules Governing Habeas Corpus Cases Under Section § 2254, the proper respondent is the warden at MCSP where Petitioner is incarcerated.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Warden Michael Martel replaces former Warden Rosanne Campbell as Respondent in this case. Therefore, the Court directs the Clerk of the Court to replace Respondent Campbell with Respondent Martel.

seventy-two years in state prison, consisting of twelve fully consecutive six year middle terms.

The California Court of Appeal affirmed Petitioner's conviction in an unpublished opinion issued on October 31, 2003. (Resp't Ex. 6.)  The California Supreme Court denied review on January 14, 2004.  (Resp't Ex. 8.)

On June 14, 2004, Petitioner timely filed a federal habeas corpus petition raising six claims: (1) that the trial court erred in instructing the jury that Petitioner could be found guilty based on propensity evidence alone using California Jury Instructions Criminal (CALJIC) No. 2.50.01; (2) that the trial court erred in instructing the jury with CALJIC No. 1.23.1.; (3) ineffective assistance of trial counsel; (4) ineffective assistance of appellate counsel; (5) that Petitioner's prior sexual assaults against the victim were improperly admitted into evidence; and (6) cumulative error based on ineffectiveness of his trial and appellate counsel.  Petitioner alleged that the two instructional error claims were the only claims he presented to the state courts and that he did not pursue the other four claims before filing his federal habeas petition because he wanted to comply with the statute of limitations.  Therefore, Petitioner asked the Court to stay the petition in order for him to return to state court to exhaust his unexhausted claims.

In a November 9, 2004 Order, the Court granted Petitioner's request to stay the petition to exhaust his state judicial remedies.  The Court also directed Petitioner to file an amended petition in this action containing only his exhausted claims and ordered that the "stay will go into effect on the date the amended

**United States District Court**
For the Northern District of California

petition is filed."  (Nov. 9, 2004 Order at 4.)  Petitioner filed his amended petition containing all his original claims on December 8, 2004, and the stay went into effect on that date.

The California Supreme Court's official website shows that the habeas petition relating to his original claims was denied on December 12, 2005 in <u>Monkres (Bryan R.) On H.C.</u>, Cal. S. Ct. No. S130326.

On June 12, 2006, Petitioner filed an "Ex-Parte Motion to File Belated Amended Petition."  Petitioner stated that he failed to comply with the Court's previous order which stated: "within thirty (30) days after receiving a final decision of the highest State court available to review his claims Petitioner must file a second amended petition in this Court which incorporates the newly exhausted claims he intends to raise in federal court."  (Nov. 9, 2004 Order at 4.)  Therefore, Petitioner asked the Court to grant him leave to file a belated petition containing newly discovered claims and for the Court to stay proceedings further to allow him to return to state court to exhaust these claims.

In an Order dated July 11, 2006, the Court lifted the stay because Petitioner had exhausted his state judicial remedies as to his original six claims.  (July 11, 2006 Order at 6.)  The Court deemed the amended petition that was filed on December 8, 2004 to be the operative pleading in this action, and denied as unnecessary Petitioner's request to file a belated amended petition.  (<u>Id.</u> at 3.)  The Court then directed Respondent to show cause why it should not grant the petition based on the six exhausted claims in the amended petition.  (<u>Id.</u>)  The Court denied Petitioner's request for leave to add newly discovered claims and to stay these proceedings

**United States District Court**
For the Northern District of California

pending the exhaustion of his new claims because he failed to specify the facts in support of each claim. (<u>Id.</u> at 5-6.)  The Court directed Petitioner to file a motion for leave to amend to add these newly discovered claims to his amended petition and for a further stay of these proceedings pending exhaustion.  (<u>Id.</u>)  Also, the Court directed Petitioner to submit a proposed second amended petition, which clearly stated, with specificity, the six newly discovered claims.  (<u>Id.</u>)

On September 15, 2006, he filed a state habeas petition with the California Supreme Court containing the six newly discovered claims.

On January 9, 2007, Respondent filed an answer to Petitioner's amended petition.

On March 12, 2007, Petitioner filed his traverse.  Petitioner also filed a motion for leave to amend his first amended petition to add newly discovered claims and to stay proceedings.  Instead of filing a proposed second amended petition as the Court directed, he filed a document entitled "Supplemental Claims to Petitioner's First Amended Federal Writ of Habeas Corpus" containing three of the six newly discovered claims.[2]

On September 19, 2007, Respondent filed an opposition to Petitioner's motion.

In an Order dated February 14, 2008, the Court denied Petitioner's motion to amend and to stay proceedings upon finding that his proposed new claims were time-barred because they asserted

---

[2] Petitioner requested leave to amend to add only three newly discovered claims as opposed to the four claims that Respondent referred to in his opposition to the motion for leave to amend.  (Mot. to Amend at 3.)

new grounds for relief supported by facts that were different than his original claims.[3]

On March 13, 2008, Petitioner filed a notice of appeal of the Court's denial of his motion to amend and to stay proceedings. Unless a circuit justice or judge issues a certificate of appealability (COA), an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1). A district court must construe a habeas petitioner's notice of appeal as a request for a COA. Id. § 2253(c)(3). Therefore, the Court construes Petitioner's notice of appeal as an application for a COA. See id.; United States v. Asrar, 116 F.3d 1268, 1270 (9th Cir. 1997). Petitioner is attempting to appeal a non-final, non-appealable order. Accordingly, his application for a COA is DENIED. Further, Petitioner's attempt to appeal does not deprive this Court of jurisdiction to enter its order in the case.

Having ruled on all preliminary motions, the Court now determines the merits of Petitioner's habeas petition.

STATEMENT OF THE FACTS

The California Court of Appeal summarized the factual background as follows:

> T.P. is appellant's stepdaughter and victim. She was 18 and 19 years old when appellant committed the charged

---

[3] The Court notes that Petitioner's proposed new claims relating to the admission of evidence from pretext phone calls are without merit. The victim consented to being recorded when she called Petitioner at the behest of law enforcement; therefore, the admission of such evidence was not unconstitutional or in violation of any federal wiretapping statutes. See United States v. Keen, 508 F.2d 986, 989 (9th Cir. 1974) (wiretaps obtained with the consent of one party to a conversation do not violate the Fourth Amendment).

United States District Court
For the Northern District of California

offenses.  T.P. lived with appellant and her mother,
appellant's wife, in Utah, Nevada and Arizona between the
ages of 12 and 14.  T.P. testified that appellant
physically and sexually abused her during that entire
period.  He began orally copulating her when she was 12;
he also sodomized her.  Eventually, when she was 14 and
living in Arizona, she told her best friend, a school
nurse and the police about the abuse.  She was taken from
her home and place in foster care for four years.  When
she left foster care, she moved in with her grandparents
in Utah.  She left her grandparents to visit her mother
and appellant in Lake County in October 2000; after she
left for the visit, she found that she was not welcome to
return to her grandparents' home and stayed in
California.  Appellant and T.P.'s mother lived in a small
trailer.  After T.P. moved in, T.P.'s mother and younger
brother shared the trailer's one bedroom; she and
appellant slept in the living room.

On October 16 or 17, 2000, T.P. and appellant were alone
in the trailer.  Appellant got mad at her for telling the
authorities what he had done in Arizona, which led to his
going to jail.  He grabbed T.P.'s throat and threatened
her with a beating.  He stopped, left the room and came
back.  At that point, he said he was going to do what she
said he had done in Arizona -- rape her.  He told her to
take off her pants and that "he was gonna do it."  She
complied with his demand that she take her pants off
because she "feared the man."  Appellant then raped her.
After he was finished, he told T.P. that if she told
anyone he would "take [her] into the woods and beat [her]
to a bloody pulp."  Appellant left the room.  T.P. lay
crying for five or ten minutes, then got dressed and
pretended as if nothing had happened.  She did not tell
her mother or the police about what had occurred because
she was scared.

Appellant did the same thing to her the next day.  On
that occasion, he did not threaten her.  He "was really
angry" and told her to go into the back bedroom.
Appellant then began a regular pattern of sexually
assaulting T.P.  Those assaults included ones in which
appellant forced T.P. to orally copulate him.  The
assaults occurred nearly every day until T.P. moved out
on July 31, 2001.  T.P. testified that she never
consented to any of the sexual assaults.  She indicated
that on one occasion appellant stopped at a store and
told her to get condoms because he did not want her to
become pregnant.  She complied with his demand because
she did not want to defy him.  After T.P. moved out of
the trailer, she went to the sheriff's department.  One
of the deputies arranged for her to make three recorded

1

"pretext" calls to appellant.  The audio tapes of those
2
calls were played for the jury.  In the course of those
calls, appellant admitted his sexual behavior when T.P.
3
lived with him between the ages of 12 and 14.  He also
admitted having sex with T.P. in Lake County.  He further
4
admitted that he threatened her in order to induce her to
have sex with him and that he threatened her with
5
physical harm if she ever told anyone.

6
Tina Louise Monkres, appellant's wife, testified for the
defense.  She indicated that T.P. never said anything to
7
her about any inappropriate behavior on appellant's part.
She further testified that T.P. always reacted warmly
8
toward appellant.  She also stated that T.P. could not be
trusted; she lied a great deal when she was younger.  She
9
admitted that T.P. had been placed in foster care because
she lived with appellant and that she chose to continue
10
to live with him rather than separate from him and get
T.P. back.  She further admitted that she has epileptic
11
seizures that occasionally affect her memory.

12
(Resp't Ex. 6 at 1-3 (brackets in original).)

13
STANDARD OF REVIEW
14
    Under the Antiterrorism and Effective Death Penalty Act
15
(AEDPA), a federal writ of habeas corpus may not be granted with
16
respect to any claim that was adjudicated on the merits in state
17
court unless the state court's adjudication of the claims:
18
"(1) resulted in a decision that was contrary to, or involved an
19
unreasonable application of, clearly established Federal law, as
20
determined by the Supreme Court of the United States; or
21
(2) resulted in a decision that was based on an unreasonable
22
determination of the facts in light of the evidence presented in
23
the State court proceeding."  28 U.S.C. § 2254(d).
24
    "Under the 'contrary to' clause, a federal habeas court may
25
grant relief if the state court arrives at a conclusion opposite to
26
that reached by the [Supreme] Court on a question of law or decides
27
a case differently than the [Supreme] Court has on a set of
28
materially indistinguishable facts."  William v. Taylor, 529 U.S.

**United States District Court**
For the Northern District of California

362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the [Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the relevant state court decision.  Id. at 412.

In determining whether the state court's decision is contrary to, or involved the unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision.  Lajoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  It also looks to any lower court decision examined or adopted by the highest state court to address the merits.  See Williams v. Rhoades, 354 F.3d 1101, 1106 (9th Cir. 2004) (because state appellate court examined and adopted some of the trial court's reasoning, the trial court's ruling is also relevant).  Respondent concedes that Petitioner has exhausted his state remedies by raising his claims on direct appeal and on his petition for a writ of habeas corpus in the California Supreme Court.  Where, as here, the highest state court to reach the merits issued a summary opinion which does not explain the rationale of its decision, federal court review under § 2254(d) is of the last state court opinion to reach the merits.  Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000).  In this case, the last state court opinion to address the merits of Petitioner's claims is the opinion of the California Court of Appeal.

Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Greene v. Lambert, 288 F.3d 1081, 1088 (9th Cir. 2002).  When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law.  Himes, 336 F.3d at 853; accord Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004).

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

DISCUSSION

Petitioner raises six claims for relief, all of which have been exhausted for the purpose of federal habeas corpus review. Petitioner's two claims of instructional error were raised on direct appeal and denied by the California Court of Appeal in a reasoned opinion.  The remaining four claims were raised in Petitioner's state habeas petition and were denied summarily: ineffective assistance of trial counsel; ineffective assistance of appellate counsel; improper admission of prior acts of Petitioner's sexual assaults against T.P.; and cumulative error based on

9

ineffectiveness  of his trial and appellate counsel.

I.   Claims Denied in a Reasoned State Court Decision

   A.   Erroneous Jury Instructions

      1.   Background

   Petitioner argues that his due process rights were violated when the trial court instructed the jury with (a) CALJIC No. 2.50.01 and (b) CALJIC No. 1.23.1.  (First Am. Pet. (FAP) at 11-15.)

      2.   Applicable Federal Law

   A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  See id. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.") (quoting Cupp, 414 U.S. at 146).  The instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  See Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147).  In other words, the district court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire process.  See United States v. Frady, 456 U.S. 152, 169 (1982)

(citing <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977)).

In reviewing an ambiguous instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the United States Constitution. <u>Estelle</u>, 502 U.S. at 72 & n.4; <u>Boyde v. California</u>, 494 U.S. 370, 380 (1990).

A determination that there is a reasonable likelihood that the jury has applied the challenged instructions in a way that violates the Constitution establishes only that a constitutional error has occurred. <u>Calderon v. Coleman</u>, 525 U.S. 141, 146 (1998). If constitutional error is found, the Court must also determine that the error had a substantial and injurious effect or influence in determining the jury's verdict before granting habeas relief. <u>Id.</u> (citing <u>Brecht</u>, 507 U.S. at 637).

   3. Analysis

    a. CALJIC No. 2.50.01

Prior to handing the case over to the jury, the trial judge instructed the jury with the 2001 revision of CALJIC No. 2.50.01 as follows:

> Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense on one or more occasions other than that charged in the case. [¶] "Sexual offense" means a crime under the laws of a state or of the United States that involves any of the following: Contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person. Contact, without consent, between the genitals or anus of the defendant and any part of another person's body. [¶] If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. If you find

United States District Court
For the Northern District of California

that the defendant had this disposition, you may, but are
not required to, infer that he was likely to commit and
did commit the crime or crimes of which he is accused.
[¶] However, if you find by a preponderance of the
evidence that the defendant committed prior sexual
offenses, that is not sufficient by itself to prove
beyond a reasonable doubt that he committed the charged
crimes. The weight and significance of the evidence, if
any, are for you to decide. [¶] Unless you are
otherwise instructed, you must not consider this evidence
for any other purpose.

(Resp't Ex. 6 at 3-4.) The appellate court recognized that

Petitioner only attacked the third and fourth paragraphs of CALJIC

No. 2.50.01 as being constitutionally infirm:

Appellant does not take issue with the jury's being
told that it could find by a preponderance of the
evidence that he had committed previous sexual offenses
and that "that fact alone, if proved by a preponderance
of the evidence, was not enough to convict." He
argues, however, that "the jury was also told that it
could give the evidence of a prior crime the weight and
significance that it saw fit. This included using the
evidence to infer that appellant had a disposition to
commit such offenses, if the jury so found, and, based
on that finding, it was permissible to infer that
appellant committed the offenses charged in this case.
Thus the jury was instructed that appellant's
commission of past sexual offenses could be used as a
link in the direct chain of evidence to convict, in
violation of the commands of due process.

(Id. at 4.) The appellate court found that it was a "logical

impossibility" that the jury could convict Petitioner solely upon

his prior sexual offenses. (Id. at 5.) The court explained:

Appellant asserts that: "notwithstanding Reliford,[4]

_____

[4] The appellate court cited California Supreme Court precedent,
People v. Reliford, 29 Cal. 4th 1007, 1012-16 (2003), which undermines
Petitioner's argument against CALJIC No. 2.50.01:

In Reliford, the Court rejected the same arguments
advanced by appellant in holding that CALJIC No. 2.50.01 is
not constitutionally infirm. (Id. at pp. 1012-1016.)
Although Reliford considered the 1999 version of the
instruction, the two paragraphs challenged by appellant
here are identical to their 1999 predecessors and were the

12

United States District Court
For the Northern District of California

this instruction deprived [him] of due process of law.
The instruction told the jury that a prior sexual
offense, found by a preponderance [of the evidence],
can support an inference of disposition and that
disposition could in turn be used to infer that
appellant was in fact guilty of the charged crime.
Therein lies the constitutional infirmity."
Appellant's argument ignores the following language
from the instruction given by the trial court:
"However, if you find by a preponderance of the
evidence that the defendant committed prior sexual
offenses, that is *not* sufficient by itself to prove
beyond a reasonable doubt that he committed the charged
crimes." (Italics added.) Given the plain language
this sentence, we see no danger that a jury would
convict a defendant of a charged offense based solely
on his commission of a prior sexual offense. Indeed,
as we stated in a slightly different context, such a
result is a "logical impossibility." (People v. James
(2000) 81 Cal.App.4th 1343, 1354; see also Reliford,
supra, 29 Cal.4th at p. 1014.) Moreover, and most
significantly, appellant's argument has been rejected
by our Supreme Court. (Reliford, supra, 29 Cal.4th at
pp. 1013-1015; Auto Equity Sales, Inc. v. Superior
Court, supra, 57 Cal.2d at p. 455.)

(Id. at 5 (brackets and emphasis in original and footnote added).)

The Due Process Clause of the Fourteenth Amendment requires
the prosecution to prove every element charged in a criminal
offense beyond a reasonable doubt. In re Winship, 397 U.S. 358,
364 (1970). The state may adopt a rule that makes it easier for it
to meet the requirement of proof beyond a reasonable doubt, so long
as the rule does not shift or reduce the burden of proof or
otherwise violate a principle of fairness contained in the Due
Process Clause. See Montana v. Egelhoff, 518 U.S. 37, 54-55
(1996).

---

subject of the Supreme Court's attention in that case.
(Compare id. at pp. 1011-1012 with instruction quoted
above.) Thus, Reliford compels us to reject appellant's
arguments here. (Auto Equity Sales, Inc. v. Superior Court
(1962) 57 Cal.2d 450, 455.)

(Resp't Ex. 6 at 4.)

13

The appellate court's decision was not contrary to, or an unreasonable application of, clearly established federal law.  See 28 U.S.C. § 2254(d)(1).  The United States Supreme Court has made clear that "instructions that might be ambiguous in the abstract can be cured when read in conjunction with other instructions" and the trial record.  Jones v. United States, 527 U.S. 373, 391 (1991).  Instructing the jury with CALJIC No. 2.50.01 did not violate Petitioner's due process rights because it did not permit a conviction upon less than proof beyond a reasonable doubt.  Given the trial court's explicit warning against confusing the lesser standard of proof for prior sexual offenses with the required higher standard of proof for the charged crime, the appellate court was reasonable in finding no reasonable likelihood that the jury convicted Petitioner of the charged offense based solely on his commission of a prior sexual offenses.

Because the appellate court's rejection of Petitioner's challenge to CALJIC No. 2.50.01 was not contrary to or an unreasonable application of clearly established federal law, this claim is DENIED.

> b.   CALJIC No. 1.23.1

The appellate court found no merit in Petitioner's argument against CALJIC No. 1.23.1:

> The standard version of CALJIC No. 1.23.1 provides:  "In [prosecutions under] Penal Code section _____, the word 'consent' means positive cooperation in an act or attitude as an exercise of free will.  The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved.  [¶]  [The fact, if established, that the defendant and _____ (the alleged victim) engaged in a current or previous dating relationship does not by itself constitute consent.]  [¶]  [Evidence that the alleged victim

14

United States District Court
For the Northern District of California

suggested, requested, or otherwise communicated to the
perpetrator that a [condom] [or] [other birth control
device] be used does not by itself constitute
consent.]"[FN2][5]

Here, the trial court gave a modified version of that
instruction.  The court inserted the Penal Code sections
for rape and forced oral copulation in the first
paragraph and gave only the second of the two bracketed
paragraphs, employing the word "condom" and dropping the
phrase "or other birth control device."

Appellant begins his challenge to the instruction given
by the court by asserting that, although states have
substantial latitude in defining the elements of criminal
offenses, they cannot require a defendant to disprove an
element of a crime.  He goes no [sic] to urge that:  "In
California, it is not accurate to say that consent is a
'defense' to the crime of rape or forced oral copulation.
Rather, the prosecution has the burden to prove that the
sexual act occurred against the will of the complaining
witness."  He argues that the instruction "pre-empted the
jury's prerogative to decide for itself whether the
evidence proved the prosecution's case beyond a
reasonable doubt and ordered the jury not to consider the
complaining witness's suggestion, implied by her purchase
of condoms, to be sufficient to establish a reasonable
doubt as to whether the sexual acts occurred against her
will," in violation of his right to due process.  We find
no merit in appellant's argument.

We first observe that appellant ignores People v.
Gonzalez (1995) 33 Cal.App.4th 1440 (Gonzalez).  In
Gonzalez, the trial court gave a modified version of the
1991 version of CALJIC No. 1.23.1, informing the jury
that the existence of a current or previous dating
relationship was insufficient to constitute consent.
(Id. at p. 1442-1443, fn. 1.)  On appeal, Gonzalez argued
that the instruction violated due process by shifting the

_____

[5] [FN2.] CALJIC No. 1.23.1 reflects the provisions of sections
261.6 and 261.7.  Section 261.6 defines consent as set forth in CALJIC
No. 1.23.1; it also provides that the existence of a previous dating
or marital relationship "shall not be sufficient to constitute
consent."  Section 261.7 provides that a victim's suggestion, request
or communication to a defendant that he use a condom or other birth
control device "without additional evidence of consent, is not
sufficient to constitute consent."

1
2
3
4
5
6
7

burden of proof on the issue of consent to him or by
creating a presumption of lack of consent.  (Id. at
p. 1443.)  The Court of Appeal rejected that argument:
"CALJIC No. 1.23.1 did not shift the burden of proof on
consent to the defense or create a presumption of lack of
consent.  The instruction merely defined consent.
Considered together, CALJIC No. [] 1.23.1 [and the other
instructions defining the elements of the offense with
which Gonzalez was charged] clearly indicated the
prosecution had the burden of proving lack of consent."
(Ibid.)

8
9
10
11
12
13
14
15
16
17
18
19
20
21

We see no meaningful distinction between the instruction
given in Gonzalez and the one we consider here.  Each
told the jury that one specific fact -- a dating
relationship or a request for use of a condom -- did not
by itself constitute consent.  Moreover, here, the court
instructed the jury with CALJIC No. 10.00, which informed
the jury that rape constituted intercourse with another
person "against that person's will," a term defined as
"without the consent of the alleged victim."  Further,
the court instructed the jury with CALJIC No. 10.10,
which informed the jury that forced oral copulation
constituted oral copulation "against the will of the
victim," a term also defined as "without the consent of
the alleged victim."  In addition, the court instructed
the jury, pursuant to CALJIC No. 2.90, that appellant was
presumed innocent and that the prosecution had the burden
of proving his guilt beyond a reasonable doubt.  We see
no basis for concluding that, given those instructions,
the jury could conceivably have construed the instruction
we consider here as shifting the burden of proving
consent to appellant, thus violating his right to due
process.  (Gonzalez, supra, 33 Cal.App.4th at pp.
1443-1444.)

22
23
24
25
26
27
28

Appellant suggests that the instruction somehow
"limit[ed] the jury's freedom to consider otherwise
competent evidence casting doubt on non-consent."  It did
not.  It told the jury that it could consider the alleged
victim's request that a condom be used -- or, in this
case, the alleged victim's purchase of condoms -- but
that it could not determine that she had consented based
solely on that evidence.  Seen in that light, the
instruction did not lessen the prosecution's burden of
proving lack of consent beyond a reasonable doubt.  (Cf.
Martin v. Ohio (1987) 480 U.S. 228, 233-234.)  While the
State may not limit the evidence a jury may consider in

16

1
2
3
4
5

> determining whether the prosecution has met its burden of
> proof on each element of a crime (ibid.), the State does
> enjoy wide latitude in defining those elements.
> (Patterson v. New York (1977) 432 U.S. 197, 205-206.)
> The instruction given by the trial court here defined
> consent in a particular context and thus did not violate
> appellant's right to due process of law. (Gonzalez,
> supra, 33 Cal.App.4th at pp. 1443-1444.)

6
7

(Resp't Ex. 6 at 5-8 (brackets and footnotes in original).)

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     The appellate court's rejection of Petitioner's claim was

neither contrary to clearly established Supreme Court precedent nor

did it involve an unreasonable determination of the facts.    28

U.S.C. § 2254(d).   First, Petitioner has failed to show that the

appellate court's determination that the instruction did not shift

the burden of proving consent to the defense was objectively

unreasonable.   The instruction provided that the jury could

consider the victim's purchase of condoms, but that it could not

determine that she had consented to Petitioner's sexual advances

based solely on that evidence.   (Resp't Ex. 6 at 7.)   Contrary to

Petitioner's argument, the instruction did not shift the burden of

proof to the defense or create a presumption of lack of consent; it

merely defined consent.   (Id. at 8.)   Also, Petitioner makes no

showing that the jury, in finding Petitioner guilty of rape and

forced oral copulation, concluded there was no consent without

first considering evidence of the condom purchase.   The trial court

expressly preserved Petitioner's due process rights by instructing

the jury, pursuant to CALJIC No. 2.90, that Petitioner was presumed

innocent and that the prosecution had the burden of proving his

guilt beyond a reasonable doubt.   (Id. at 7.)   Finally, the

appellate court reasonably determined that Petitioner failed to

distinguish his case from Gonzalez, where the court found CALJIC

United States District Court
For the Northern District of California

No. 1.23.1 constitutional.  (<u>Id.</u>)

Accordingly, the appellate court's rejection of Petitioner's challenge to CALJIC No. 1.23.1 was not contrary to or an unreasonable application of clearly established federal law, and this claim is DENIED.

II.  Claims Denied Summarily by State Court

A.   Ineffective Assistance of Trial Counsel

1.   Background

Petitioner argues that his Sixth Amendment rights were violated when his trial counsel initially miscalculated his maximum sentence exposure after conviction.[6]  (FAP at 4-A.)

The trial record of the hearing on the <u>Marsden</u>[7] motion made after the start of trial reveals the following facts underlying Petitioner's ineffective assistance of trial counsel claim:

> MR. RHOADES [Trial Counsel]:  Your Honor, before actually Mr. Monkres -- there's a problem; I need to address the court.  I've advised Mr. Monkres of this, and I think this is the appropriate setting for this:
>
> At the time I received this case from Ms. Evans, who conducted the preliminary hearing, I reviewed the court-- case file, including the complaint, noted the number of charges leveled against Mr. Monkres, and did a calculation as to the exposure he would be facing should he be convicted on all charges.  I do that in every case.

---

[6] In his original petition, Petitioner challenges his trial counsel's failure to call additional defense witnesses and to move to suppress the pretext phone calls.  (Pet. at 27.)  However, the Court will not consider these claims because Petitioner does not include them in his first amended petition, which is the operative petition in this case.  (FAP at 4-A.)

[7] In <u>People v. Marsden</u>, 2 Cal. 3d 118, 124 (1970), the California Supreme Court held that the trial court deprived the defendant of his constitutional right to effective assistance of counsel when it denied his motion to substitute new counsel without giving him an opportunity to state specific examples of inadequate representation.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    In this particular case, what escaped me was the
2  subsequent section regarding full-term, consecutive
   sentencing versus the standard sentences for subordinate
3  terms.

4    Because of that I advised Mr. Monkres that his
   exposure was a maximum of 32 years.

5
6    It turns out his exposure actually, if you take into
   account full-term, consecutive sentencing, is 96 years as
   it sits now.

7
8    At pretrial there was an initial offer made to Mr.
   Monkres of a single count.  If he pled to a single count
9  the balance would be dismissed.  And it was anticipated
   that should that happen the other counts would be
10 dismissed with Harvey waivers.

11   Mr. Monkres probably would have been subject to no
   less than the mid term; probably, because of the number
12 of counts, the upper term, for a maximum exposure of
   eight years.

13
14   I spoke with Mr. Monkres on a couple of occasions
   about whether or not he would avail himself of that
   offer, and he declined to do so.

15
16   Mr. Monkres stated to me that he felt no compulsion
   to plead to any charges for which he is not guilty, of
17 which he felt he was not guilty.  However, Mr. Monkres
   was weighing that eight years against a balance of 32,
18 rather than that eight years against a balance of 96.

19   I explained to Mr. Monkres, my error in that.

20   Mr. Monkres expressed his dissatisfaction with the
   information I had provided to him; and I have to say not
21 without cause.  And had he had that information early on
   we may not be here now.

22
23   So that's the presentation I have to make to the
   court.

24   And I apologize to the court and to Mr. Monkres for
   that error.

25
26   Mr. Monkres, do you have any comment you want to
   make?

27 THE DEFENDANT:  I don't know.

28
   MR. RHOADES:  You can say whatever you want to say,

19

1   Bryan.

2   THE COURT:  Are you making some request that you want
    alternate counsel?
3

4   THE DEFENDANT:  Yes.

5   THE COURT:  Do you have anything you want to say in that
    regard?
6

7   THE DEFENDANT:  I just don't feel that he's -- he's
    represented me fairly.  Like I said before, he never
    comes by to see me at jail and talk about the case.  Very
8   seldom he did.  I see him maybe -- maybe three or four
    times in five months.  He said that . . . You know, I
9   don't even remember what all he said to me anymore.

10      I just don't feel that I've been getting fair
    representation.
11

12  (Resp't Ex. 2, Vol. 5 at 6-9.)  The trial court denied

13  Petitioner's <u>Marsden</u> motion stating, "The court would decline

14  to make any order changing attorneys at this point."  (<u>Id.</u> at

15  9.)

16      After the completion of the prosecution's case, the

17  following colloquy occurred:

18  THE COURT:  The courtroom has now been cleared.

19      The reason that the court has done this is that now
    that the People's case in chief has been concluded and
20  the defendant obviously is now aware of evidence that
    he's facing, the question that remains unanswered from
21  this morning is whether or not now, knowing that the
    maximum penalty is 96 years, does -- would the defendant
22  have accepted the offer.

23  MR. RHOADES:  It's obviously a question I can't answer;
    only Mr. Monkres can answer that question.
24

25  THE COURT:  Mr. Monkres?

26  THE DEFENDANT:  I don't know.  I don't know if I would
    have or not.  It would probably have changed the outcome,
27  but I honestly don't know.

28  THE COURT:  The court would suggest that we have the
    prosecutor now step back in, and indicate whether or not

United States District Court
For the Northern District of California

1    he'd be willing to accept the offer that's still on the
2    table.  Any comment?

3    MR. RHOADES:  I suppose just to maintain the record,
     there is no problem with doing that.

4    THE COURT:  Mr. Monkres, if the People would say that the
5    offer was open, would you be -- would you consider that
     offer?

6    THE DEFENDANT:  Can I have a moment to concur [sic] with
7    my attorney?

8    THE COURT:  Certainly.

9    [Defense counsel and client confer.]

10   MR. RHOADES:  Your Honor, I believe Mr. Monkres has
11   indicated that he feels comfortable with the state of the
     evidence and the evidence yet to come, that he'd prefer
12   to continue with trial.

13   THE COURT:  Fine.  You may bring --

14   MR. RHOADES:  Is that correct --

15   THE DEFENDANT:  Yes.

16   MR. RHOADES:  -- Mr. Monkres?

17   THE DEFENDANT:  Yes.

18   THE COURT:  You may bring the prosecutor back in.

19   (Id. at 58-59 (brackets in original).)

20       Petitioner did not raise this claim on appeal, and the state

21   supreme court denied the claim on habeas review without citation or

22   comment.  Because there is no reasoned state court opinion which

23   discusses the claim, the Court must conduct an independent review

24   of the record to determine whether the California Supreme Court's

25   summary denial of the claim was an unreasonable application of

26   clearly established federal law.  See Himes, 336 F.3d at 853.

27       2.  Applicable Federal Law

28       A claim of ineffective assistance of counsel is cognizable as

a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  <u>Id.</u>

In order to prevail on an ineffective assistance of counsel claim, a petitioner must establish two things.  First, he must establish that counsel's performance was deficient.  That is, if it fell below an "objective standard of reasonableness" under prevailing professional norms.  <u>Id.</u> at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance.  Specifically, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  A court need not determine whether counsel's performance was deficient before examining the prejudice suffered as a result of the alleged deficiencies.  <u>Id.</u> at 697; <u>Williams v. Calderon</u>, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1124 (1996).  The <u>Strickland</u> framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  <u>See</u> <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 404-08 (2000).

       3.   Analysis

Petitioner has not shown that as a result of any of his trial

United States District Court
For the Northern District of California

counsel's actions there is "a reasonable probability that . . . the result of the proceeding would have been different." Id. at 694.

A federal habeas court may grant a writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Section 2254(d)(2) applies to intrinsic review of a state court's process, or situations in which the petitioner challenges the state court's findings based entirely on the state court record, whereas section 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court. See Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004). In Taylor, the Ninth Circuit established a two-part analysis under sections 2254(d)(2) and (e)(1). First, federal courts must undertake an "intrinsic review " of the state court's factfinding process under the "unreasonable determination" clause of section 2254(d)(2). Id. at 1000. The intrinsic review requires federal courts to examine the state court's factfinding process, not its findings. "Once the state court's factfinding process survives this intrinsic review -- or in those cases where petitioner does not raise an intrinsic challenge to the facts as found by the state court -- the state court's findings are dressed in a presumption of correctness." Id.

Here, during the Marsden hearing, the trial court gave

United States District Court
For the Northern District of California

1   Petitioner the opportunity to explain why new counsel was required,

2   and gave defense counsel an opportunity to respond. (Resp't Ex. 2,

3   Vol. 5 at 6-9.)  After the Marsden hearing, the trial court found

4   that Petitioner had failed to make a sufficient showing that

5   substitute counsel was required.  Accordingly, the Court finds that

6   the factfinding process was intrinsically reasonable.  See United

7   States v. Robinson, 913 F.2d 712, 716 (9th Cir. 1990); Hudson v.

8   Rushen, 686 F.2d 826, 829 (9th Cir. 1982).

9        Upon finding that the state court's factfinding process

10  survives an intrinsic review, the Court turns to the state court's

11  determination of the facts, which is "dressed in a presumption of

12  correctness." Taylor, 366 F.3d at 1000.  The state court's factual

13  findings are presumed correct under section 2254(e)(1) unless

14  rebutted by clear and convincing evidence.

15       Petitioner claims that his trial counsel "failed to advise him

16  of the minimum and maximum sentences he was facing and the

17  benefits, risks and probable consequences of accepting and

18  rejecting the district attorney's offer of eight years top and

19  bottom and Petitioner was prejudiced by this failure." (FAP at 4-

20  A.)  However, the record shows that during his Marsden hearing,

21  Petitioner chose not to accept the plea offer even after the error

22  was corrected and he had heard all of the evidence against him.

23  Petitioner has failed to establish prejudice because he has not

24  presented clear and convincing evidence to rebut the presumption

25  that he had not been substantially impaired by his counsel's

26  initial sentencing miscalculation.  Therefore, he has provided no

27  authority suggesting that his trial counsel's conduct fell below an

28  "objective standard of reasonableness." See Strickland, 466 U.S.

24

United States District Court
For the Northern District of California

1    at 687-88.

2         The Court finds that the state court's rejection of

3    Petitioner's ineffective assistance of trial counsel claim was not

4    contrary to or an unreasonable application of <u>Strickland</u>.   <u>See</u>

5    <u>Himes</u>, 336 F.3d at 853.   Accordingly, this claim for relief is

6    DENIED.

7         B.   Admission of Uncharged Acts of Sexual Assault

8              1.   Background

9         Before trial, the State filed a motion to admit evidence of

10   charged physical and uncharged sexual assaults Petitioner committed

11   in Arizona against T.P. when she was between the ages of twelve and

12   fourteen.   (Resp't Ex. 1 at 52-59.)

13        On February 20, 2002, the trial court held a hearing regarding

14   the allegations of uncharged prior sexual acts against the same

15   victim.   The trial record reveals the following:

16        THE COURT:   We'll proceed on to the motion for uncharged
17        offenses under 1108.[8]   Ms. Krones, any showing or argument

18

19        [8] California Evidence Code § 1108 provides, in relevant part, "In
     a criminal action in which the defendant is accused of a sexual
20   offense, evidence of the defendant's commission of another sexual
     offense or offenses is not made inadmissible by Section 1101, if the
21   evidence is not inadmissible pursuant to Section 352."   Cal. Evid.
     Code § 1108.

22        California Evidence Code § 1101 complements § 1108 as
23   follows:

24        (a) Except as provided in this section and in Sections 1102,
          1103, 1108, and 1109, evidence of a person's character or
25        a trait of his or her character (whether in the form of an
          opinion, evidence of reputation, or evidence of specific
26        instances of his or her conduct) is inadmissible when
          offered to prove his or her conduct on a specified occasion.

27        (b) Nothing in this section prohibits the admission of
28        evidence that a person committed a crime, civil wrong, or
          other act when relevant to prove some fact (such as motive,
          opportunity, intent, preparation, plan, knowledge, identity,

25

United States District Court
For the Northern District of California

in support of your motion for the admissibility of this conduct?

MS. KRONES:  Well just in regards to the motion I filed on October 31, 2001; and also, in addition, the defendant and the alleged victim in this case both refer to incidents that happened when she was a child, but the issue is there were -- she alleges that there were acts of sexual molestation from the age of 12 to 14, as well as physical abuse.

When she was 14, I believe, she reported it.  And she was living in -- they were living in Arizona at the time she finally reported it.

Mr. Monkres was charged, and he was -- he pled guilty to physical abuse felony, but -- and in exchange for that plea the molestation charges or sexual abuse were dismissed.

In the conversations between the two of them on the tapes there's numerous references to, you know, allegations that she made that he molested her when she was a child or -- in Arizona.  Things like that.

    In addition, I expect her testimony to be that the first act of rape, the first charge, count 1, he told her that, "I'm going to do to you what you said I did in Arizona."

    And so therefore, again, those prior acts need to come in to explain what that reference is to.  It's not going to make sense to the jury if they don't know, if

────────────

absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.

(c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness.

Cal. Evid. Code § 1101.

    California Evidence Code § 352 provides as follows:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  Cal. Evid. Code § 352.

26

**United States District Court**
For the Northern District of California

1    they don't understand, the relationship between the two
2    of them prior to this, and as well as the reference to
     her prior allegations.

3        And so therefore for those reasons, as well as the
4    reason under 1101, to prove his intent and motivation
     towards her, that he has the sexual intent towards her,
5    and it's the same intent that he had when she was a
     child, as well as to establish the duress, that the
6    victim was under duress, in regards to the rape;

7        The definition -- or the elements must be shown is
     either she was threatened or she was under duress; and
8    her prior relationship with him when she was a child is
     directly relevant to the fact that she was under duress,
9    and she would not have -- she would not have done what
     he'd tell her to do in terms of taking off her clothes
10   and things like that without that prior relationship when
     she was a child.  And that goes for both the sexual abuse
11   as well as the physical abuse.

12   THE COURT:  What specific type of evidence are you going
13   to be offering?

14   MS. KRONES:  Well I'm --

15   THE COURT:  Specific acts or just in general that things
     happened in Arizona?
16
17   MS. KRONES:  I'm going to ask her -- I'm not going to go
     into a lot of detail, but I am going to ask her, you
18   know, when she was 12 to 14, she will testify that there
     was fondling and oral copulation and anal penetration, I
19   think, once or twice.  And also physical abuse.  I'm not
     going to have her go into each specific act as to what
20   happened, but just that that did happen from the time she
     was 12 to 14.
21
22   THE COURT:  And how do you plan to introduce evidence of
     this prior felony conviction for physical abuse?
23
24   MS. KRONES:  Well I have a certified copy of the
     conviction, but in regards to that, I probably won't be
25   able to get it in unless Mr. Monkres testifies;

26       But in regards to her testimony in regards to the
     underlying acts, I plan to get it through her testimony.
27
     THE COURT:  Mr. Rhoades, any argument on the 1108 issue?
28
     MR. RHOADES:  Yes.  Mr. Monkres' sustained conviction
     for, for lack of another term, child abuse, stems from

spanking Tiffany.  That left a bruise on her left
buttocks.  She made allegations that she was sexually
assaulted, anally penetrated, all these other things.
She was examined in the course of the investigation by
medical personnel, and no physical evidence was returned
to substantiate her allegations.  Consequently, Mr.
Monkres pled guilty to the child abuse, was placed on
probation, did not plead guilty and was not convicted of
any molestation or sexual assault or anything related to
the charges that are pending in this court.  Those
charges were dismissed outright because they could not be
proven.  The People are seeking to essentially retry that
case here by bringing in her complaint in that court that
was not -- and in fact, as I said, was dismissed.  Her
showing of being under duress or anything else needs to
be substantiated independently, because of the highly
prejudicial nature of her coming in and saying these
things, which have already been litigated, occurred some,
now, six years ago, as opposed to simply being able to
come in and testify as to the immediate events.

     The prejudicial effect of bringing up the charges
out of Arizona, which were not -- did not result in a
conviction, is extremely high.  I think its probative
value as it relates to these incidents, occurring far
after the fact and occurring far away in time and place,
is extreme.

     Neither 1101 nor 1108 specifically permit this,
because if she's attempting to show:  Well she was under
duress?  Why?  Because she had made a complaint before
that was not substantiated, or are the People trying to
introduce this to say:  Well he did this before because
she said he did.  And that would be excluded under 1101,
because you can't offer it for that purpose.  Under 1108,
similarly, the entire purpose of offering that, I think,
is to attempt to show that this is far more probative
than prejudicial.  But I think 352 would also say it is
not.  I don't see, number 1, how we have anything -- if
Mr. Monkres testifies and the People wish to introduce
evidence of the commission -- the conviction of a felony
for impeachment purposes, that's fine.  There's no
argument to that, because that's certainly a legitimate
use of that prior conviction.  It is not however, you
know, a crime of moral turpitude or anything else that
would be necessarily prejudicial to Mr. Monkres, although
apparently it is a felony, although I am not sure as to
the specifics of the charging language in Arizona, as to
whether or not that would qualify as a felony in
California.  That may not be an issue that's even
relevant at the particular time.

28

United States District Court
For the Northern District of California

        But based on the information I have, as far as what
was contained in the minutes and the sentencing documents
from February 20 -- excuse me -- yes, from February 20 of
1997, from the probation report that was prepared by the
Mojave County Probation Department, also received in that
court February 20 of '97, and the information that's
contained in other documents, I don't see that this is
more probative than prejudicial, and it certainly is
being offered only to show a consistent pattern of
conduct with Mr. Monkres, which is another way of saying
predisposition.  And I'd ask the court to exclude any
information about conduct of unsubstantiated charges in
Arizona.

THE COURT: Rebuttal?

MS. KRONES:  Yes, your Honor.  Your Honor, the fact that
there was a physical exam and no physical evidence was
found is not -- by no means does it mean that it didn't
happen.   The court's probably aware of lots of cases
where that happens, especially when there's only
allegations of anal penetration, rather than vaginal
penetration.

        The fact that why they allowed him to plead guilty
to the physical abuse and dismissed the sexual abuse
charges, that was up to the prosecutor; we don't know
they did that because they didn't feel they could prove
the sexual abuse; that's totally irrelevant.

        But 1108 and 1101 does allow for acts, whether they
are convicted or not, whether they were ever brought as
charges, to be used to show the defendant's intent and
motivation.  Any here specifically it is very relevant to
show the duress that she was under.  You cannot look at
the situation in a vacuum.  First of all, she's going to
testify that she was gone for four years and then she
came back here and started living with her mother again.
She was in foster care.  Why was she in foster care?
That has to be explained.  It has to be explained why she
wasn't living with the mother and the defendant for those
four years.  It all goes to explain the total
relationship between her and the defendant, and the
CALJIC instruction specifically says the whole
circumstances, including the relationship between the
perpetrator and the victim, are factors to be considered
in regards to her duress.

        It's not -- it's to show her state of mind in terms
of maybe why she, when he threatened her -- why she
didn't -- why she believed him.  And when he -- when he
started doing sexual things to her, his relationship and

29

his domination over her are relevant to show that duress.

And I have already mention [sic] that there are numerous references to it, and without the jury hearing about that, they are gonna see this relationship in a total vacuum; and that's what the case of People versus Sack (phonetic), which is on point here, addresses. The -- it's not gonna be any more prejudicial than her testimony, if they believe her, as to what happened as a child, because it's all coming from her, it's her testimony. But it's relevant to her testimony and her state of mind and her relationship with the defendant.

(Resp't Ex. 2, Vol. 2 at 5-14 (footnote added).)  The trial court granted the State's motion following the hearing.  (Id. at 14.)

2.   Applicable Federal Law

Erroneous state evidentiary rulings are not cognizable in federal habeas corpus proceedings unless the admission of evidence violated the petitioner's rights under the Constitution.  Estelle, 502 U.S. at 67.  The Due Process Clause of the Fourteenth Amendment provides the framework for evaluating claims based on alleged constitutional violations in state court evidentiary rulings.  See Pulley v. Harris, 465 U.S. 37, 41 (1984).  Permitting a jury to hear evidence of prior crimes or bad acts may violate due process. See Marshall v. Lonberger, 459 U.S. 422, 438-39 n.6 (1983); Fritchie v. McCarthy, 664 F.2d 208, 212 (9th Cir. 1981) (citing Spencer v. Texas, 385 U.S. 554, 561 (1967)).  But, a federal court cannot disturb a state court's decision to admit evidence of prior crimes or bad acts on due process grounds, unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir.), cert. denied, 479 U.S. 839 (1986).

The admission of other crimes as evidence violates due process

30

United States District Court
For the Northern District of California

where there are no permissible inferences the jury can draw from
the evidence (in other words, no inference other than conduct in
conformity therewith).  See McKinney v. Rees, 993 F.2d 1378, 1384
(9th Cir. 1993); Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir.
1991).  The relevance of the evidence of other bad acts to motive
or intent, the opportunity for the jury to weigh the credibility of
the witness's account of the other bad acts, and the trial court's
use of a cautionary instruction to limit the jury's consideration
of the other bad acts are all factors a federal court may consider
to determine whether a due process violation occurred.  See Houston
v. Roe, 177 F.3d 901, 910 n.6 (9th Cir. 1999).  Juries are presumed
to follow a trial court's limiting instructions with respect to the
purposes for which evidence is admitted.  Aquilar v. Alexander, 125
F.3d 815, 820 (9th Cir. 1997).

>        3.   Analysis

The Court construes Petitioner's claim as an attack against
the constitutionality of section 1108.  While no federal court has
specifically ruled on the constitutionality of section 1108,
several circuit courts have upheld the use of propensity evidence
under Rules 413 and 414 of the Federal Rules of Evidence.[9]  See,
e.g., United States v. Castillo, 140 F.3d 874, 881 (10th Cir.
1998); United States v. Mound, 149 F.3d 799, 801 (8th Cir. 1998).

The Ninth Circuit has upheld the constitutionality of Rule

---

[9]  The California Supreme Court noted that section 1108 was
adopted after Rule 413 of the Federal Rules of Evidence and was
modeled on it.  See People v. Falsetta, 21 Cal. 4th 903, 912 (1999).
Rule 413 provides in pertinent part:  "In a criminal case in which the
defendant is accused of an offense of sexual assault, evidence of the
defendant's commission of another offense or offenses of sexual
assault is admissible, and may be considered for its bearing on any
matter to which it is relevant."

414, permitting admission of evidence of similar crimes in child molestation cases. See United States v. LeMay, 260 F.3d 1018, 1024-25 (9th Cir. 2001), cert. denied, 534 U.S. 1166 (2002). The court held in LeMay that Rule 414 is not unconstitutional because it is limited in its function by Rule 403. Id. at 1026-27. Rule 403 directs judges to exclude any evidence submitted under Rule 414 that is more prejudicial than probative. Id. at 1027. The court reasoned that this balancing process eliminates any due process concerns from Rule 414, stating: "As long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded." Id. at 1026.

The reasoning of LeMay applies equally to this case because the California rules are analogous to the federal rules. Like Federal Rules 413 and 414, the California courts' application of section 1108 requires the exercise of the courts' discretion. Section 1108 does not permit the unrestricted admission of all prior bad acts but is limited to allowing only prior sexual offenses which pass section 352 review. See Cal. Evid. Code § 1108(a). Section 352 parallels Rule 403 of the Federal Rules of Evidence because it permits a trial judge to exclude evidence when its probative value is substantially outweighed by its prejudicial effect. See Cal. Evid. Code § 352. As the California Supreme Court held in Falsetta, the requirement under section 352 to balance the prejudicial effect of the evidence against its probative value ensures that evidence admitted under section 1108

32

**United States District Court**
For the Northern District of California

1  will not infringe on the right to a fair trial guaranteed under the

2  Due Process Clause.  21 Cal. 4th at 913.

3      Furthermore, the United States Supreme Court has expressed no

4  opinion on whether a state law, such as California Evidence Code

5  § 1101 in the present case, would violate the Due Process Clause if

6  it permitted the use of "prior crimes" evidence to show propensity

7  to commit a charged crime.  See Estelle, 502 U.S. at 75 & n.5

8  (declining to rule on the constitutionality of propensity

9  evidence); Alberni v. McDaniel, 458 F.3d 860, 864-67 (9th Cir.

10 2006).  Because habeas relief may not be granted unless the state

11 court decision was contrary to, or an unreasonable application of,

12 clearly established federal law as determined by the Supreme Court,

13 see 28 U.S.C. § 2254, and there is no Supreme Court precedent that

14 the admission of propensity evidence pursuant to California

15 Evidence Code § 1101 violates due process, the decision of the

16 appellate court cannot be said to have contradicted or unreasonably

17 applied clearly established federal law in upholding the

18 constitutionality of section 1101.  See Alberni, 458 F.3d at 866-67

19 (under AEDPA, habeas relief cannot be granted on claim Supreme

20 Court has reserved).

21      Petitioner claims that the testimony of T.P. relating to the

22 prior bad acts should not have been admitted because it was more

23 prejudicial than probative under section 352.

24      The trial court rejected Petitioner's claim, stating:

25      Evidence Code 1108 permits evidence of prior sexual
        conduct to show propensity unless it's otherwise
26      inadmissible under 352.  In conducting that weighing
        process under 352 the court would find this evidence to
27      be admissible.  It is probative as to the issue of
        whether or not the victim was coerced because of past
28

physical, if not sexual, abuse.  It does not appear to the court that it would be unduly time-consuming.  There is some risk of the jury confusing the issues, but I think that can be handled.  And the court makes that ruling based upon the People's representation that this will be evidence that is basically limited to the conduct that gave rise to the criminal case down in Arizona.

(Resp't Ex. 2, Vol. 2 at 15.)

The California Supreme Court affirmed the trial court's decision by summarily denying Petitioner's state habeas petition. Because the state court's balancing test was not contrary to but consistent with federal law, the state court's rejection of his claim was not objectively unreasonable.  See Himes, 336 F.3d at 853.  Therefore, Petitioner's claim of a due process violation is DENIED.

C.   Ineffective Assistance of Appellate Counsel

1.   Background

Petitioner contends that his Sixth Amendment right was violated because his appellate counsel failed to raise on direct appeal:  (1) that his trial counsel was ineffective and (2) that the trial court erred in admitting evidence of prior bad acts. (Pet. at 26.)

Because there is no reasoned state court opinion which discusses the claim, the Court conducts an independent review of the record to determine whether the California Supreme Court's summary denial of this claim was an unreasonable application of clearly established federal law.  See Himes, 336 F.3d at 853.

2.   Applicable Federal Law

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his

34

United States District Court
For the Northern District of California

1  first appeal as of right.  <u>See</u> <u>Evitts v. Lucey</u>, 469 U.S. 387, 391-
2  405 (1985).

3      Claims of ineffective assistance of appellate counsel are
4  reviewed according to the standard set out in <u>Strickland</u>.  <u>Miller</u>
5  <u>v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir. 1989); <u>United States v.</u>
6  <u>Birtle</u>, 792 F.2d 846, 847 (9th Cir. 1986).  A habeas petitioner,
7  therefore, must show that counsel's advice fell below an objective
8  standard of reasonableness and that there is a reasonable
9  probability that, but for counsel's unprofessional errors, he would
10  have prevailed on appeal.  <u>Miller</u>, 882 F.2d at 1434 & n.9 (citing
11  <u>Strickland</u>, 466 U.S. at 688, 694; <u>Birtle</u>, 792 F.2d at 849).

12      Appellate counsel does not have a constitutional duty to raise
13  every nonfrivolous issue requested by a criminal defendant.  <u>See</u>
14  <u>Jones v. Barnes</u>, 463 U.S. 745, 751-54 (1983); <u>Gerlaugh v. Stewart</u>,
15  129 F.3d 1027, 1045 (9th Cir. 1997); <u>Miller</u>, 882 F.2d at 1434 n.10.
16  The weeding out of weaker issues is widely recognized as one of the
17  hallmarks of effective appellate advocacy.  <u>See</u> <u>id.</u> at 1434
18  (footnote and citations omitted).  Appellate counsel, therefore,
19  will frequently remain above an objective standard of competence
20  and have caused his client no prejudice for the same reason --
21  because he declined to raise a weak issue.  <u>See</u> <u>id.</u>

22          3.  Analysis

23      As mentioned above, Petitioner failed to establish that he was
24  prejudiced by his trial counsel's initial miscalculation of
25  Petitioner's sentence exposure.  Petitioner has failed to show
26  that, but for his appellate counsel's failure to present the
27  ineffective assistance of trial counsel claim, he would have been
28  successful on appeal.  And, even if trial counsel's miscalculation

**United States District Court**
For the Northern District of California

had been found deficient on direct appeal, it would not have been deemed prejudicial to satisfy the Strickland test.  Because Petitioner's ineffective assistance of trial counsel claim would not have prevailed on direct appellate review, it was not unreasonable for his appellate counsel to decide against raising the issue.  See Miller, 882 F.2d at 1434 n.10.

Similarly, Petitioner has failed to establish that it was unreasonable for appellate counsel not to raise the claim of improper admission of prior bad acts evidence.  The trial court conducted a balancing test to weigh the prejudicial effect of the prior bad acts evidence under California Evidence Code section 352.

Petitioner has not shown that his appellate counsel's failure to raise a claim of improper admission of prior bad acts evidence on direct appeal amounted to deficient performance, or that there is a reasonable probability that, but for counsel's failure to do so, he would have prevailed on appeal.

The Court finds that the state court's rejection of Petitioner's ineffective assistance of appellate counsel claim was not contrary to or an unreasonable application of Strickland.  See Himes, 336 F.3d at 853.  Accordingly, his claim for habeas corpus relief on this basis is DENIED.

> D.   Cumulative Error Based on Ineffectiveness of Petitioner's Trial and Appellate Counsel

> 1.   Background

Petitioner contends that his Sixth and Fourteenth Amendment rights to due process and a fair trial were violated by the cumulative error based on ineffectiveness of his trial and appellate counsel.  Because there is no reasoned state court

36

opinion discussing Petitioner's claim, the Court conducted an

independent review of the record to determine whether the

California Supreme Court's summary denial of the claim was an

unreasonable application of clearly established federal law.  See

Himes, 336 F.3d at 853.

> 2.   Applicable Federal Law

In some cases, although no single trial error is sufficiently

prejudicial to warrant reversal, the cumulative effect of several

errors may still prejudice a petitioner so much that habeas relief

must be granted.  See Alcala v. Woodford, 334 F.3d 862, 893-95 (9th

Cir. 2003) (affirming district court's conditional grant of habeas

relief where multiple constitutional errors hindered the

petitioner's efforts to challenge every important element of proof

offered by prosecution).  However, where there is no single

constitutional error, nothing can accumulate to the level of a

constitutional violation.  See Mancuso v. Olivarez, 292 F.3d 939,

957 (9th Cir. 2002); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir.

1996).

> 3.   Analysis

Petitioner argues that he was denied a fair and impartial

trial and appeal based on ineffectiveness of both his trial and

appellate counsel.  (Pet. at 29.)  As discussed above, there was no

error by either Petitioner's trial or appellate counsel which would

warrant granting habeas relief.  Therefore, Petitioner has failed

to show that his due process rights were violated by the cumulative

error based on the ineffectiveness of his trial and appellate

counsel.

37

1    The Court finds that the state court's rejection of

2 Petitioner's cumulative error claim was not objectively

3 unreasonable.  See Himes, 336 F.3d at 853.  Accordingly, this claim

4 is DENIED.

                            CONCLUSION

5

6    For the foregoing reasons, the petition for a writ of habeas

7 corpus is DENIED as to all claims.  The Clerk of the Court shall

8 enter judgment and close the file.

9    Petitioner's application for a COA is DENIED.  The Clerk of

10 the Court shall transmit the file, including a copy of this Order,

11 to the Court of Appeals.  See Fed. R. App. P. 22(b); United States

12 v. Asrar, 116 F.3d 1268, 1270 (9th Cir. 1997).

13    IT IS SO ORDERED.

14
DATED: 3/18/08
15
                        CLAUDIA WILKEN
16                      United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONKRES, | Case Number: CV04-02311 CW |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| KERNAN et al, | |
| Defendant. _____/ | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 18, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Bryan Randall Monkres
T-50137; A-1-132-L
Mule Creek State Prison
P.O. Box 409000
Ione, CA 95640-9000

Peter Ernest Flores
California Attorney General's Office
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004

Dated: March 18, 2008

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk

P:\PRO-SE\CW\HC.04\Monkres2311.denyHC.frm    39